UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CECIL POUNCEY, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5288** |
| **ROBERT TANNER, CCE, WARDEN**<br>**22ND JUDICIAL DISTRICT COURT** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.     Factual Background

The petitioner, Cecil Pouncey, III ("Pouncey"), is a convicted inmate who has been released from prison and is currently on parole.[2] On December 3, 2007, Pouncey was charged by Bill of Information in St. Tammany Parish with one count of possession of cocaine.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1. Under 28 U.S.C. § 2241(c)(3), a person must be "in custody in violation of the Constitution or laws or treaties of the United States" to file a federal habeas petition. The "in custody" language, however, does not require that a petitioner be "physically confined in order to challenge his sentence on habeas corpus." *Maleng v. Cook*, 490 U.S. 488, 491 (1989). Although physically released from prison, a convicted person subject to parole restrictions on his liberty is still in custody for purposes of federal habeas relief. *See Jones v. Cunningham*, 371 U.S. 236, 241-42 (1963); *United States v. Tavarez*, 79 F. App'x 79, 80 (5th Cir. 2003) (a petitioner not yet discharged from his term of parole is still "in custody" for habeas corpus purposes); *Isaac v. Cain*, No. 10-4591, 2013 WL 4649042, at * 1 n.1 (E.D. La. Aug. 29, 2013); *Mills v. Louisiana*, No. 09-7453, 2013 WL 3776338, at *1 n.2 (E.D. La. Jul. 15, 2013) (order adopting attached report).

[3] St. Rec. Vol. 1 of 4, Bill of Information, 12/3/07.

The record indicates that on October 3, 2007, at approximately 9:45 p.m., Sergeant Stephen Culotta of the Covington Police Department was in an unmarked car patrolling an area of the city known for high crime and narcotics activity.[4]  As he did so, Sergeant Culotta noticed a black Ford Mustang automobile parked in the middle of the intersecting roadway.  Sergeant Culotta knew that the house closest to the car was abandoned.  He then saw a man approach the passenger's side of the Mustang and bend inside the vehicle as if he was having a conversation.  Several minutes later, the man looked up and noticed the unmarked police vehicle at the intersection.  According to Sergeant Culotta, the man looked surprise and backed away from the Mustang into a dark wooded area near the abandoned house.

Believing that he interrupted illegal activity, Sergeant Culotta drove around the block and parked his vehicle in a dark area.  The black Mustang remained parked in the middle of the roadway.  Soon, the man reappeared from the woods, walked toward the Mustang, reached inside the passenger window, and then again backed off into the wooded area.

The Mustang immediately drove away.  As it approached the intersection, it turned left without its turn signal being activated.  Sergeant Culotta followed the Mustang and observed it turn left again without a turn signal.  He then initiated the traffic stop by activating his emergency lights.

The Mustang pulled into the parking lot of a convenience store.  Sergeant Culotta ordered the driver to exit and walk to the back of the automobile.  The driver, later identified as Pouncey, complied and met Sergeant Culotta at the back of the automobile.

---

[4]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Pouncey*, 11 So.3d 1244 (La. App. 1st Cir. 2009) (Table); *State v. Pouncey*, No. 2009-KA-0075, 2009 WL 165598, at *1-*2 (La. App. 1st Cir. Jun. 12, 2009); St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2009-KA-0075, pp. 2-4, 6/12/09.

Sergeant Culotta explained to Pouncey he had been stopped for his failure to use a turn signal. Sergeant Culotta then mentioned the suspicious activity he had observed regarding the Mustang parked in the middle of the roadway. Pouncey was visibly nervous, shaking, and stuttering. During the conversation, Pouncey placed his right hand into his right front pocket. Sergeant Culotta ordered him to remove his hand, but several minutes later, Pouncey again placed his hand into the pocket. Sergeant Culotta then requested Pouncey's permission to conduct a pat down search for weapons on his person. Pouncey acquiesced and pursuant to Sergeant Culotta's instruction, turned and placed his hands on the back of his automobile.

As Sergeant Culotta began the search, Pouncey placed his hand into his right front pant pocket, and removed an object. Sergeant Culotta grabbed Pouncey's arm and shook the item out of his hand as he asked Pouncey to drop it. As the object, a cigarette pack, was being shaken, Sergeant Culotta could hear a rattle consistent with the presence of a hard object inside the pack. Pouncey dropped the cigarette pack onto the hood of the trunk.

Knowing that cigarette packs are commonly used to conceal narcotics, Sergeant Culotta asked Pouncey what was in the pack. Pouncey replied, "I got a little something to smoke." Sergeant Culotta, believing that Pouncey was referring to crack cocaine, picked up the pack, opened it, and discovered three large rocks of suspected crack cocaine. Nothing else was inside the pack.

Sergeant Culotta placed Pouncey under arrest for possession of crack cocaine. Initial field tests indicated the substance to be cocaine. Pouncey had approximately nine rocks of crack cocaine with a total weight of 4.86 grams. Subsequent testing by St. Tammany Parish Crime Laboratory confirmed that the substance was crack cocaine.

Pouncey was tried before a jury on March 4, 2008, and was found guilty as charged.[5] At a hearing held on March 17, 2008, the Trial Court denied Pouncey's motions in arrest of judgment, for judgment of acquittal, and for new trial.[6] After waiver of legal delays, the Trial Court sentenced Pouncey to serve five years in prison at hard labor.[7]

The State thereafter filed a multiple offender bill charging Pouncey as a second felony offender, to which Pouncey entered a plea of not guilty.[8] At a hearing held on September 18, 2008, the Trial Court denied Pouncey's motion to reconsider the sentence previously imposed and the motion to quash the multiple bill.[9] Pouncey also admitted the allegations in the multiple bill, and the Trial Court adjudicated him to be a second felony offender.[10] The Trial Court vacated the original sentence and re-sentenced Pouncey as a multiple offender to serve ten years in prison at hard labor.[11] The Court later denied Pouncey's motion to reconsider that sentence.[12]

On direct appeal to the Louisiana First Circuit Court of Appeal, Pouncey's private counsel asserted four errors:[13] (1) the Trial Court erred in denying the motion to suppress the evidence; (2)

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes, 3/4/08; Jury Verdict, 3/4/08; Trial Transcript, 3/4/08; St. Rec. Vol. 2 of 4, Trial Transcript (continued), 3/4/08.

[6]St. Rec. Vol. 1 of 4, Sentencing Minutes, 3/17/08; St. Rec. Vol. 2 of 4, Sentencing Transcript, 3/17/08; Motion in Arrest of Judgment, 3/6/08; Motion for Judgment of Acquittal, 3/6/08; Motion for New Trial, 3/6/08.

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 3/17/08; St. Rec. Vol. 2 of 4, Sentencing Transcript, 3/17/08.

[8]*Id.*; Multiple Bill, 3/17/08.

[9]St. Rec. Vol. 1 of 4, Hearing Minutes, 9/18/08; St. Rec. Vol. 2 of 4, Hearing Transcript, 9/18/08; Motion to Reconsider Sentence, 4/8/08; Motion to Quash, 4/30/08.

[10]*Id.*

[11]St. Rec. Vol. 1 of 4, Minute Entry, 9/18/08; St. Rec. Vol. 2 of 4, Multiple Offender Hearing Transcript, 9/18/08; Reasons for Judgment, 10/22/08.

[12]St. Rec. Vol. 1 of 4, Trial Court Order, 9/18/08; Motion to Reconsider Sentence, 9/18/08.

[13]St. Rec. Vol. 4 of 4, Appeal Brief, 2009-KA-0075, 2/25/09.

the Trial Court erred in denying the motion for post-trial judgement of acquittal based on the insufficiency of evidence to support the verdict; (3) the Trial Court erred in denying the motion to quash the multiple bill; and (4) the multiple offender sentence was excessive.

On June 12, 2009, the Louisiana First Circuit affirmed Pouncey's conviction finding no merit in the first two claims.[14]  The Court, however, found that Pouncey only conceded his identity at the multiple offender hearing and the State failed to otherwise meet its burden with regard to the validity of the prior offense.  The Court therefore vacated the multiple offender adjudication, pretermitted a ruling on the excessiveness of the sentence, and remanded the matter for further proceedings.[15]

In spite of the remand, on July 8, 2009, Pouncey submitted *pro se* a writ application to the Louisiana Supreme Court in which he argued that the Louisiana First Circuit erred in its ruling related to the denial of the motion to suppress, the sufficiency of the evidence and in reversing the habitual offender adjudication where there was insufficient evidence to sustain either part of the conviction.[16]  Pouncey filed a supplement to the application in further support of his challenge to the sufficiency of the evidence at trial.[17]  The Louisiana Supreme Court denied the application without stated reasons on May 21, 2010.[18]

---

[14]*Pouncey*, 11 So.3d at 1244; *Pouncey*, 2009 WL 165598, at *1; St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2009-KA-0075, 6/12/09.

[15]One member of the panel dissented on the basis that Louisiana law did not require the State to prove anything when the defendant did not deny the allegations in the multiple bill.  *Id*.

[16]St. Rec. Supp. Vol. 1 of 1, La. S. Ct. Writ Application, 2009-KA-1691, 7/23/09 (postmarked 7/13/09, dated 7/8/09); St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2009-KO-1691, 7/23/09 (showing postmark 7/13/09).

[17]St. Rec. Supp. Vol. 1 of 1, Supplement to Writ Application, 2009-KA-1691, 10/6/09.

[18]*State v. Pouncey*, 36 So.3d 221 (La. 2010); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2009-KO-1691, 5/21/10.

In the meantime, on November 5, 2009, the Trial Court held a hearing pursuant to the remand order.[19] After receiving additional evidence and argument, the Court determined Pouncey to be a second felony offender. The Court vacated the original sentence and again sentence Pouncey as a multiple offender to serve ten years in prison at hard labor.

On appeal after the remand and re-sentencing, Pouncey's private counsel argued that the Trial Court imposed an excessive sentence and erred in denying the motion to quash the multiple bill because the State violated the plea agreement in the predicate case.[20] Pouncey filed *pro se* a supplemental brief arguing that the second proceeding amounted to double jeopardy on the multiple bill.[21]

On February 11, 2011, the Louisiana First Circuit affirmed the habitual offender adjudication and sentence finding no merit in the double jeopardy argument and that the sentence was not excessive.[22] The Court also found that the issue of denial of the motion to quash was procedurally barred because it was not preserved for appeal.

Pouncey's conviction and sentence became final thirty (30) days later, on Monday, March 14, 2011,[23] because he did not file for rehearing or timely seek review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (appeal is final when the state defendant does

---

[19]St. Rec. Vol. 1 of 4, Sentencing Minutes, 11/5/09; St. Rec. Vol. 2 of 4, Hearing Transcript, 11/5/09.

[20]St. Rec. Vol. 4 of 4, Appeal Brief, 2010-KA-1129, 7/30/10.

[21]St. Rec. Vol. 4 of 4, Supplemental brief, 2010-KA-1129, 8/16/10.

[22]*State v. Pouncey*, 57 So.3d 612 (La. App. 1st Cir. 2011) (Table); *State v. Pouncey*, No. 2010-KA-1129, 2011 WL 2135161, at *1 (La. App. 1st Cir. Feb. 11, 2011); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2010-KA-1129, 2/11/11.

[23]The thirtieth day was Sunday, March 13, 2011, leaving the end date to fall on the next business day, Monday, March 14, 2011. *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period).

not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

On April 5, 2011, Pouncey submitted an untimely[24] writ application to the Louisiana Supreme Court asserting four grounds for review:[25] (1) the State Court erred in denying his motion to quash the habitual offender bill of information; (2) the sentence was excessive; (3) the State failed to present sufficient evidence to support the multiple offender adjudication; and (4) the State's decision to provide supporting documentation for the multiple bill on remand amounted to prosecutorial misconduct. The Louisiana Supreme Court summarily denied the application on February 17, 2012.[26]

While that matter was pending, on October 24, 2011, Pouncey submitted a motion for the Trial Court to reconsider his sentence.[27] In that motion, Pouncey argued that his conviction was not supported by sufficient evidence or adequate facts. He also claimed that the Trial Court should have considered as part of his sentencing that he had a drug addiction which stemmed from his veteran status. He again urged that the Trial Court abused its discretion when it denied the motion to quash

---

[24]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[25]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 11-KH-709, 4/8/11 (dated 4/5/11). The pleading also shows portions dated by Pouncey on March 31, 2011, which was still untimely under La. S. Ct. Rule X§5. *See also*, St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2011-KH-709, 4/8/11 (showing postal meter 4/7/11).

[26]*State ex rel. Pouncey v. State*, 82 So.3d 277 (La. 2012); St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2011-KH-0709, 2/17/12.

[27]St. Rec. Vol. 3 of 4, Motion to Reconsider Sentence, 10/26/11 (dated 10/24/11).

the multiple bill and when it allowed the State a second chance on the multiple bill. He further argued that the Trial Court failed to consider the differences between crack and powder cocaine for sentencing purposes. The Trial Court denied the motion without stated reasons on October 27, 2011.[28] He did not seek further review of this ruling.

Several months later, on April 16, 2012, Pouncey submitted an application for post-conviction relief to the state trial court in which he asserted the following grounds for relief:[29] (1) He was subject to an unreasonable stop, search, and seizure and the state trial court erred in denying the motion to suppress; (2) the Trial Court erred in denying the motion to quash the multiple bill based on an improper prior plea; and (3) counsel provided ineffective assistance when he failed to subject the State's case to meaningful opposition through investigation of the crime scene, failed to adequately challenge the multiple bill, and failed to present adequate grounds to challenge the State's case on appellate review.

On April 25, 2012, the Trial Court denied relief finding that Pouncey's first and second claims were repetitive of matters addressed on appeal and the second claim also was an inappropriate collateral attack on the predicate offense.[30] The Court also found the claims of ineffective assistance of counsel to be without merit.

---

[28]St. Rec. Vol. 3 of 4, Trial Court Order, 10/27/11.

[29]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 4/20/12 (dated 4/16/12).

[30]St. Rec. Vol. 1 of 3, Trial Court Order, 4/25/12.

The Louisiana First Circuit denied Pouncey's untimely[31] writ application without stated reasons on July 27, 2012.[32] The Court also denied his request for rehearing on August 20, 2012, as procedurally improper.[33] The Louisiana Supreme Court also denied Pouncey's related writ application without stated reasons on January 18, 2013.[34]

## II.     Prior Federal Habeas Petition

On January 13, 2012, Pouncey filed his first petition for federal habeas corpus relief in this Court under Civ. Action No. 12-0103"I"(6), in which he raised two claims: (1) his sentence was excessive because he did not receive leniency due to his veteran status; and (2) he was denied effective assistance of counsel based on the following seven grounds: (a) his conviction was not supported by an adequate factual basis; (b) his addiction to illicit drugs should have benefitted him through the Louisiana Sentencing Guidelines; (c) the Trial Court erred in not addressing his dependancy on drugs, which stemmed from his veteran status, that could warrant a downward sentencing; (d) there was insufficient evidence to support his conviction; (e) Trial Court abused its discretion when it denied quashing the use of the predicate offense, which infringed upon the original plea agreements; (f) the Trial Court was biased when it allowed the State to "get a second

---

[31]Under La. App. R. 4-3, Pouncey had thirty (30) days from issuance of the lower court's order to file a writ application which he did not do. He submitted his writ application to the Louisiana First Circuit on June 6, 2012, which was beyond that time period.

[32]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2012-KW-0990, 7/27/12; St. Rec. Vol. 3 of 3, 1st Cir. Writ Application, dated and filed 6/6/12.

[33]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2012-KW-0990, 8/20/12.

[34]St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2012-KH-1955, 1/18/13; La. S. Ct. Writ Application, 12-KH-1955, 9/5/12 (postal metered 8/24/12, dated 8/22/12); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2012-KH-1955, 9/5/12 (showing postal meter 8/24/12).

bite of the apple"; and (g) the Trial Court did not consider the difference between crack and powder cocaine for sentencing.

After receiving a response from the State, the case was re-allotted to the undersigned magistrate judge on June 6, 2012.[35] The undersigned issued a Report and Recommendation on August 21, 2012, recommending that Pouncey's petition be dismissed without prejudice for failure to exhaust state court remedies as to both claims.[36]

On September 11, 2012, the District Judge adopted the report and dismissed Pouncey's petition without prejudice for failure to exhaust state court remedies.[37] The Court denied issuance of a certificate of appealability and Pouncey sought no further review.[38]

### III. Current Federal Habeas Petition

On August 6, 2013, the clerk of this Court filed Pouncey's second petition for federal habeas corpus relief in which he raised the following grounds for relief:[39] (1) The Trial Court erred in denying the motion to suppress where he was subject to an unreasonable stop, search, and seizure; (2) the Trial Court erred in denying the motion to quash the multiple bill based on an improper prior plea; and (3) counsel provided ineffective assistance when he failed to adequately argue the motion to suppress, failed to properly impeach and cross-examine Sergeant Culotta and/or have his testimony excluded, failed to investigate the stop and the crime scene in order to adequately challenge the State's case.

---

[35]Civ. Action No. 12-0103"I", Rec. Doc. Nos. 6, 7, 8.

[36]Civ. Action No. 12-0103"I"(4), Rec. Doc. No. 9.

[37]Civ. Action No. 12-0103"I"(4), Rec. Doc. Nos. 10, 11.

[38]Civ. Action No. 12-0103"I"(4), Rec. Doc. No. 12.

[39]Rec. Doc. No. 1, p. 11.

The State filed an answer and memorandum in opposition to Pouncey's petition arguing that his petition was not timely filed and his claims were not fully exhausted in state court.[40] Alternatively, the State also argues that one of his claims is procedurally barred from federal review and the remainder of the claims do not present a basis for federal habeas relief.

## IV.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[41] applies to this petition, which is deemed filed in this court under the federal mailbox rule on July 11, 2013.[42] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[40]Rec. Doc. Nos. 8, 9.

[41]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505, n.11 (5th Cir. 1992).

[42]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Pouncey's federal habeas petition on August 6, 2013, when the filing fee was received. Pouncey dated his signature on the petition and memorandum in support on July 11, 2013. This is the earliest date appearing in the record on which he could have delivered it to prison officials for mailing to this Court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

In this case, the State contends that Pouncey's petition was not timely filed and his claims were not properly exhausted and one claim is in procedural default. Although the record supports both the exhaustion and limitations defenses, the untimely filing is dispositive of the petition for the following reasons.

## V.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[43] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As calculated above, Pouncey's conviction and sentence were final on March 14, 2011. Under § 2244, Pouncey had one year, or until March 14, 2012, to file a timely federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Pouncey's current § 2254 petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

---

[43]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

### A. Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on*

*other grounds by Carey*, 536 U.S. 214 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In the instant case, the AEDPA filing period began to run on March 15, 2011, the day after Pouncey's conviction and sentence became final. The one-year filing period ran uninterrupted for 223 days, until October 24, 2011, when Pouncey submitted the motion to reconsider his sentence to the state trial court. The filing period was tolled until November 28, 2011, which was thirty (30) days after the Trial Court ruled and Pouncey did not file for review in the higher state courts.[44] *See Melancon*, 259 F.3d at 401.

The filing period began to run again on November 29, 2011, and did so for the remaining 142 days, until April 18, 2012, when it expired. Pouncey had no other <u>properly</u> filed <u>state</u> application for post-conviction or other collateral review pending during that time.

The Court is aware of the other filings made by Pouncey which do not provide him with any additional statutory tolling under the AEDPA and related federal law. First, on April 5, 2011, Pouncey submitted for filing an untimely writ application to the Louisiana Supreme Court after his second appeal. As noted above, under La. S. Ct. Rule X § 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within thirty (30) days of the issuance of the judgment under review or denial of a timely filed application for rehearing. *Accord Wilson*

---

[44]The thirtieth day was Saturday, November 26, 2011, leaving the last day of the period to fall on Monday, November 28, 2011.

*v. Cain*, 564 F.3d 702 (5th Cir. 2009). Of course, for prisoners, the appropriate mailbox rule is also applied. *Causey*, 450 F.3d at 604-05.

As outlined above, the Louisiana First Circuit issued its opinion to Pouncey on February 11, 2011.[45] Pouncey signed and submitted the writ application to the Louisiana Supreme Court fifty-two (52) days later on April 5, 2011. This clearly was not within the 30-day time limit allowed under La. S. Ct. Rule X § 5. A writ application which fails to comply with La. S. Ct. Rule X § 5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler*, 533 F.3d at 318-319; *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same). The United States Supreme Court has made clear that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226). Pouncey's 2011 Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period, which expired on April 18, 2012, as calculated above.

The Court also recognizes that, during the running of this time period, on December 30, 2011, applying the appropriate mailbox rule, Pouncey signed and submitted his first federal petition for habeas corpus relief for filing in this Court. However, the prior federal habeas petition was <u>not</u> an application for <u>state</u> post-conviction or other collateral review and therefore did not fall under the tolling provisions of § 2244(d)(2). *Duncan*, 533 U.S. at 181-82; *Grooms v. Johnson*, 208 F.3d 488,

---

[45]St. Rec. Vol. 3 of 4, Notice of Judgment, 2010-KA-1129, 2/11/11.

489 (5th Cir. 1999). Pouncey is not entitled to statutory tolling for the time his first federal petition was pending. *Id.*, 533 U.S. at 182; *Grooms*, 208 F.3d at 489.

For these reasons, Pouncey's federal petition submitted for filing on July 11, 2013, was not timely under the AEDPA.

### B. No Basis for Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United*

*States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Pouncey has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling under the § 2244(d) computation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above. Had Pouncey diligently pursued the full-extent of his state court remedies in a timely manner, he could have better preserved the federal filing period. The record instead reflects that he engaged in piecemeal presentation of his issues and incomplete pursuit of relief in the state courts. There is no basis for equitable tolling in this record.

Pouncey's federal petition is deemed filed in this Court on July 11, 2013, which was almost fifteen months after the AEDPA filing period expired on April 18, 2012. Pouncey's petition should be dismissed as time-barred.

**VI.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Cecil Pouncey, III's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[46]

New Orleans, Louisiana, this 14th day of May, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[46]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.